UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN BYRNE,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN COLVIN,<br><br>    Defendant. | Case No. 13-cv-04720-JCS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 12 |

## I. INTRODUCTION

Plaintiff Brian Byrne challenges the Commissioner of Social Security's denial of his application for disability benefits, claiming that the Administrative Law Judge ("ALJ") improperly rejected the treating physician's opinion that Byrne can stand only up to three hours. Byrne has filed a Motion for Summary Judgment requesting this Court to reverse the decision and remand the case for additional proceedings, and the Commissioner has filed an Opposition requesting this Court to affirm the decision. For the reasons stated below, Plaintiff's Motion for Summary Judgment is GRANTED.[1]

## II. BACKGROUND

Brian Byrne is in his mid-forties and suffers from degenerative disc disease of the cervical spine and a rotator cuff tear in his right shoulder. AR at 22, 26. In addition, Byrne was diagnosed with hepatitis C, pancreatitis, depression, and Axis I history of polysubstance abuse and

---

[1] Normally, to obtain a judgment affirming the decision below, Defendant needs to file under Civil Local Rule 16-5 a counter-motion for summary judgment rather than an opposition. Since Defendant's Opposition clearly seeks summary judgment affirming the decision below, this time the Court will treat the Opposition as Defendant's motion for summary judgment, which is DENIED for the same reasons that Plaintiff's Motion is granted. *See Castelblanco v. Colvin*, No. 13-CV-05315-JCS, 2014 WL 3964950, at *1 (N.D. Cal. Aug. 13, 2014). The parties consented to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

dependence. AR at 22–24. Byrne also reports that he experiences pain and cramping in his feet, chronic knee pain, and carpal tunnel syndrome. AR at 22–23. He has a high school education and once worked as a carpet installer, carpet cleaner, construction worker, and taxi driver. AR at 79–80.

### A. Procedural History

In November 2010, Byrne filed a claim for Supplemental Security Income ("SSI") disability benefits, alleging disability since December 31, 2009. AR 162–67. His application was denied initially and on reconsideration. AR 89–93, 100–04. Byrne then requested a hearing before an Administrative Law Judge. At the hearing in March 2012, Byrne was represented by counsel, and testimony was provided by Byrne and a vocational expert. AR at 42–86. In May 2012, the ALJ issued a decision that Byrne was not disabled, finding that though Byrne had physical impairments preventing him from performing his past relevant work, they did not prevent him from performing other jobs in the economy. AR at 17–31. In August 2013, Byrne's request for Appeals Council review was denied. AR at 1–4. Byrne then brought this civil action for judicial review of the Commissioner's final decision. His argument focuses on the narrow question whether the ALJ had legally adequate reasons for rejecting the treating physician's opinion that Byrne can only stand up to three hours. Mot. at 4.

### B. ALJ's Findings

In determining disability, the ALJ is required to follow a sequential five-part evaluation process. 20 C.F.R. § 404.1520(a). At Step One, the ALJ considers whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If she is, the ALJ finds that the claimant is not disabled, and the evaluation stops.

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to Step Two and considers whether the claimant has "a severe medically determinable physical or mental impairment," or combination of such impairments. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, disability benefits are denied at this step.

If it is determined that one or more impairments are severe, the ALJ will perform Step Three of the analysis, comparing the medical severity of the claimant's impairments to a list of impairments that the Commissioner has found to be disabling. 20 C.F.R. § 404.1520(a)(4)(iii). If one or a combination of the claimant's impairments meets or equals a listed impairment, the claimant is found to be disabled.

Otherwise, the ALJ proceeds to Step Four and considers the claimant's residual functional capacity ("RFC") and whether she can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (a)(4)(iv). If the claimant can still perform past relevant work, she is found not to be disabled.

If the claimant cannot perform past relevant work, the ALJ proceeds to the fifth and final step of the analysis. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the burden shifts to the Commissioner to show that the claimant, in light of her impairments, age, education, and work experience, can perform other jobs in the national economy. *Johnson v. Chater*, 108 F.3d 178, 180 (9th Cir. 1997). A claimant who is able to perform other jobs that are available in significant numbers in the national economy is not considered disabled and will not receive disability benefits. 20 C.F.R. § 404.1520(f). Conversely, where there are no jobs available in significant numbers in the national economy that the claimant can perform, the claimant is found to be disabled. *Id*.

Here, the ALJ found in Step One that Byrne was not engaged in substantial gainful activity. AR at 22. In Step Two, the ALJ found that Byrne had a combination of severe physical impairments consisting of degenerative disc disease in the cervical spine and a rotator cuff tear in the right shoulder. *Id*. The ALJ found that the rest of Byrne's ailments–hepatitis C, pancreatitis, depression and other mental impairments, feet and knee pain, and carpal tunnel syndrome–were not severe, and that his history of polysubstance abuse was not material to the determination of disability. AR at 22–24. In Step Three, the ALJ found that Byrne's severe impairments did not meet or equal a listed impairment. AR at 25.

Thus the ALJ proceeded to determine Byrne's residual functional capacity ("RFC")–which is his ability to do work based on all relevant evidence in the record and considering the limitations from all his impairments. AR at 26–29; 20 C.F.R. § 416.945; 20 C.F.R. § 415.1520(e).

3

The ALJ found that Byrne could "perform less than a full range of light work," "cannot reach over shoulder level with his right master arm," and "is limited to occasional extension and flexion of his neck." AR at 26. However, the ALJ found no limitations on Byrne's ability to stand for extended periods despite the treating doctor's opinion that Byrne "can only stand 3 hrs." AR at 28, 344. Instead, the ALJ adopted the non-treating, non-examining doctor's opinion that Byrne is not limited in his ability to stand for extended periods and can stand a full six hours in an eight-hour workday.[2] AR at 28, 367. Based on this RFC and the vocational expert's testimony, the ALJ determined that Byrne could not perform past relevant work, but that he could perform other jobs in the economy. AR at 29.

### C. ALJ's Basis for Rejecting the Treating Physician's Opinion

In assessing the claimant's RFC, the ALJ noted that "in February 2011, the claimant's treating physician stated the claimant can stand up to three hours." AR at 28. In rejecting the opinion, the ALJ listed three reasons: (1) the opinion was inconsistent with the claimant's activities of daily living; (2) it appeared to be based on the claimant's own subjective complaints that were not credible; and (3) it was inconsistent with the unremarkable image studies of the claimant's bilateral feet and knees. *Id*.

### D. Motion

Byrne argues that the ALJ's rejection of the treating physician's opinion was not supported by substantial evidence. Mot. at 4. First, Byrne argues that the ALJ pointed to "nothing in the record to indicate that Mr. Byrne's daily activities and his volunteer work require him to stand more than three hours." *Id*. With respect to the basis of the treating physician's opinion, Byrne argues that the ALJ pointed to "nothing in the opinion upon which to conclude that it is based entirely on the subjective complaints." *Id*. With respect to his feet and knees x-rays, Byrne responds that the ALJ failed "to acknowledge that Mr. Byrne's recognized cervical degenerative disc disease could be aggravated by prolonged standing or fixed positions." *Id*.

---

[2] From the treating doctor's note that Byrne "can only stand 3 hrs," it is unclear whether he can stand three hours at a time or three hours in a workday.

### E. Opposition

Defendant highlights the principles that the ALJ is the "final arbiter" with respect to determining credibility and resolving conflicts and ambiguities in medical evidence, and that where there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld. Opp'n at 4–5; *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Magallanes v. Bowen*, 881 F. 2d 747, 750 (9th Cir. 1989). Defendant also submits in a footnote that Dr. Lee's note in the medical chart indicating that Byrne "can only stand 3 hrs" is not a proper medical opinion.[3] Opp'n at 4. Defendant adds that the new evidence Byrne submitted to the Appeals Council does not change the fact that substantial evidence supports the ALJ's decision.[4] *Id*. at 5.

Otherwise, Defendant primarily reiterates the ALJ's reasons. Opp'n at 4–5. Defendant writes that "First, the ALJ found that this assessment [treating doctor's] was inconsistent with Plaintiff's activities of daily living….The ALJ noted that Plaintiff was independent in activities of daily living, cooked, did housework, washed dishes, did laundry, bought groceries, used a computer, played the piano, took walks, and volunteered for a nonprofit agency." *Id*. at 4. Defendant does not address Byrne's argument that nothing in the record indicates that these activities require him to stand more than three hours. With regard to the basis of the treating doctor's opinion, Defendant cites *Tommasetti*'s proposition that an ALJ may reject a treating physician's opinion where it is based on a claimant's self-reports that have properly been discounted as non-credible. *Id*.; *see Tommasetti*, 533 F.3d at 1041. Defendant does not respond to Byrne's argument that nothing in the opinion indicates that it was based on subjective complaints. With regard to the unremarkable feet and knees x-rays, Defendant actually re-characterizes the ALJ's reason to suggest purported inconsistencies between the opinion and other medical evidence: "The ALJ also found that the treating physician opinion was inconsistent with the objective medical evidence in the record….The ALJ specifically noted that an MRI of the cervical spine showed moderate multilevel degenerative disc disease but was otherwise unremarkable; a

---

[3] It is not necessary to consider this argument because the ALJ did not use this reason as a basis to reject the opinion. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (the Court is "constrained to review the reasons the ALJ asserts" for denying benefits).
[4] It is also not necessary to address this argument because Plaintiff's Motion does not argue that the new evidence renders the ALJ's decision improper.

1  December 2010 X-ray of the right shoulder was negative; and physical findings on examination
2  were largely unremarkable." Opp'n at 4.

### III. LEGAL STANDARD

This Court has authority to review the Commissioner's denial of benefits. 42 U.S.C. § 405(g). This Court will only disturb the denial of benefits if the decision "contains legal error or is not supported by substantial evidence"; otherwise, the Court must affirm the decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla but not necessarily a preponderance"–it is "reasonable evidence that a reasonable mind might accept as adequate to support the conclusion." *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes*, 881 F. 2d at 751. Under this standard, the ALJ's findings are upheld if "supported by inferences reasonably drawn from the record." *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Where the record supports more than one rational interpretation, the Court must defer to the ALJ's decision. *Magallanes*, 881 F. 2d at 750.

### IV. ANALYSIS

As a general rule, the opinion of a treating physician should be given more weight than the opinion of a doctor who does not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To reject a treating physician's opinion in favor of another doctor's contradicting opinion, the ALJ must provide "specific and legitimate reasons" that are "supported by substantial evidence in the record." *Id*. The opinion of a non-examining physician, such as Dr. Rudito in this case, is not by itself substantial evidence justifying the rejection of a treating physician's opinion. *Id*.

Here, the ALJ offers three reasons for rejecting the opinion of the treating physician, Dr. Lee, that the claimant "can only stand 3 hrs." AR at 28, 344. First, the ALJ observes that the opinion is inconsistent with the claimant's daily activities, including his volunteer work. AR at 28. The ALJ also remarks that "it appears this opinion is based on the claimant's own subjective complaints, which further weakens the credibility of this opinion." AR at 28–29. Finally, the ALJ notes that the opinion is inconsistent with the unremarkable image studies of the claimant's

1 bilateral knees and feet. *Id*. We review each reason for support by substantial evidence in the
2 record.

### A.  Daily Activities

Byrne points out that nothing in the record about his daily activities contradicts the opinion that he can stand only up to three hours. Mot. at 4. Indeed, in support of his assessment that Byrne's "inability to stand and walk for extended periods" are "wholly inconsistent" with the record, the ALJ cites to Byrne's ability to take walks, walk fast without the use of an assistive device, volunteer at a non-profit 40-50 hours per week, cook, do housework, wash dishes, do laundry, and buy groceries. AR at 28. We find nothing in the record to indicate that these daily activities require Byrne to stand more than three hours. Just because a person takes walks without an assistive device, performs household chores, and volunteers 40-50 hours per week–without any further specificities on his duties as a volunteer or the duration of his walks–does not mean that he is standing more than three hours a day or more than three hours at a time. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (where ALJ inferred that claimant was capable of sitting at least six hours per work day based on claimant's statements that he watched six to ten hours of TV a day, the court found that "the assumption that Batson watched television while sitting is not confirmed by the record; it is possible that Batson at times watched television while standing or reclining, or that he changed positions from time to time"); *cf. Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001) ("The mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled"). Thus there is no support in the record for the ALJ's conclusion that Byrne's daily activities contradict the opinion that he can stand only up to three hours. Though we defer to the ALJ's interpretation when the record reasonably supports it, *see Morgan*, 169 F.3d at 599, here, the ALJ made a blanket assumption that was unsupported by the record. *See Batson*, 359 F.3d at 1197. The ALJ's finding that Dr. Lee's opinion was inconsistent with Byrne's daily activities is thus not supported by substantial evidence in the record.

### B. Subjective Complaints

The ALJ also rejects Dr. Lee's opinion because "it appears this [Dr. Lee's] opinion is based on the claimant's own subjective complaints, which further weakens the credibility of this opinion," given that the ALJ found Byrne's self-reports to be not credible. AR at 28–29. Byrne, however, argues that the ALJ "points to nothing in the opinion upon which to conclude that it is based entirely on the subjective complaints." Mot. at 4. We find that the basis of Dr. Lee's note– whether it is Byrne's self-reports or medical results or the physician's own observations–is ambiguous, thus triggering the ALJ's duty to develop the record regarding the basis of Dr. Lee's opinion before rejecting the opinion on a haphazard guess that it was based on a subjective complaint. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

An ALJ may reject a treating physician's opinion "if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, an ALJ cannot reject an opinion for being based on subjective complaints when it is ambiguous whether the opinion was in fact based on subjective complaints. *See Smolen*, 80 F.3d at 1288 (where the treating doctor's opinions were in the form of "yes-or-no" and "check-the-box" answers without explanations, the ALJ had a duty to conduct an inquiry into the basis of the opinions before he could reject the opinions on the ground that he thought they were based on "unwarranted assumptions"). In essence, where the basis of the treating physician's opinion is ambiguous, the ALJ cannot just guess; he has a duty to develop the record regarding the basis of the opinion before he can reject the opinion for being baseless or not credible. *Id*. The reason is that in social security cases, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Id*. The duty exists even where the claimant is represented by counsel. *Id.* The duty is triggered by ambiguous or inadequate evidence in the record; a specific finding of ambiguity or inadequacy by the ALJ is not necessary. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). Although the claimant still bears the burden of proving that he is disabled, an ALJ is required to develop the record when a doctor's report is ambiguous. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

8

Here, the basis of Dr. Lee's opinion is ambiguous. AR at 344. The opinion exists in the form of a handwritten statement in a medical chart: "Can only stand 3 hrs." *Id*. In the line above the statement are notes on Byrne's shoulder, cervical disc degeneration, x-rays, and an MRI. *Id*. In the line below the statement is a note indicating that the patient "wants SSI." *Id*. The record is silent on whether the opinion is based on Byrne's subjective complaints, the doctor's observations, the x-ray results, or other medical evidence. *Id*. To reject this opinion on the grounds that the opinion is based on Byrne's "subjective complaints," the ALJ must first conduct an inquiry into the basis of Dr. Lee's opinion–because as it stands, the source of the opinion is ambiguous. *See Smolen*, 80 F.3d at 1288. The ALJ can fulfill this duty by, for example, subpoenaing Dr. Lee or submitting questions to the doctor. *Id*. (where the ALJ needed to know the basis of the doctor's opinion to evaluate it, the ALJ could conduct an appropriate inquiry by "subpoenaing the physicians or submitting further questions to them…he could also have continued the hearing to augment the record"). While in *Smolen*, the court found that the ALJ's assumption about the basis of the treating doctor's opinion lacked support under a clear and convincing reason standard, we find that such an assumption, as in the ALJ's assumption in the present case, also lacks support under the substantial evidence standard. *See id*.

While the ALJ's conclusion must be upheld where the evidence supports more than one rational interpretation and the ALJ is "the final arbiter" with respect to determining credibility and resolving conflicts and ambiguities of medical evidence as the Defendant underscores, the case law is well-established that where ambiguities stem from a lack of record rather than existing conflicting evidence, the ALJ may not read the ambiguity against the claimant without attempting to develop the record first. *See Smolen*, 80 F. 3d at 1288 ("Having failed to fully develop the record regarding the basis for Dr. Hoeflich's opinions [that claimant could not sustain even sedentary work], the ALJ could not then reject those opinions" on the assumption that they were "based on unwarranted assumptions"); *Hilliard v. Barnhart*, 442 F. Supp. 2d 813, 821 (N.D. Cal. 2006) ("Because of the uncertainty surrounding [claimant's] mental condition, including the fact that his college education may have been completed before a significant brain trauma occurred, the ALJ's stated reasons for not finding a cognitive impairment are insufficient. This is another

9

1  example of why the record should have been further developed"). Here, the ambiguity–the basis
2  of Dr. Lee's opinion–stems from a failure to develop the record. The ALJ can easily conduct an
3  inquiry into the ambiguity by subpoenaing Dr. Lee or submitting the question to him. *See Smolen*,
4  80 F.3d at 1288. Thus, having failed to develop the record regarding the basis for Dr. Lee's
5  opinion, the ALJ could not then reject the opinion by assuming that they were based on subjective
6  complaints. *See id*.

### C.  X-rays of Feet and Knees

The ALJ finds that Dr. Lee's opinion is inconsistent with the "unremarkable image studies of [Byrne's] bilateral knees and feet." AR at 28. The record, however, does not show a contradiction between the x-ray results and the opinion that Byrne can only stand up to three hours. We find no support in the record that explains why the x-rays of Byrne's feet and knees suggest that he can stand more than three hours.

First, the record does not support that Byrne's feet and knees are the sole cause of his standing limitations. Byrne also suffers from moderate multilevel degenerative disc disease in his cervical spine, which the ALJ recognizes. AR at 22. In addition, Dr. Lee specifically noted Byrne's cervical disk degeneration in the line preceding the statement that Byrne "can only stand 3 hrs." AR at 28, 318–319, 344. While Byrne's testimony may suggest that his inability to stand long is related to or caused in part by his feet and knees ("I can't stand up for many hours…at a time. I've got to sit down. My knees ache. My calves ache. My bones ache"), nothing in the record suggests that his standing limitations are wholly caused by his feet and knees. AR at 58. The ALJ's finding that the unremarkable feet and knees x-rays contradict Dr. Lee's opinion, however, requires the assumption that Byrne's feet and knee impairments are the only reason why he might have standing limitations, which is not supported by substantial evidence in the record.

Even if the ALJ reasonably inferred that Byrne's feet and knee conditions are the sole cause of his standing limitations, the record does not show any incongruity between the x-ray results and a limited ability to stand. *See Tommasetti*, 533 F.3d at 1041 (rejecting treating doctor's opinion only where the opinion was "inconsistent with the medical records," finding that the "incongruity between" the doctor's opinion and the medical records provided a specific, legitimate

reason for rejecting the doctor's opinion). Here, the x-rays indicate "mild chondrocalcinosis of the menisci" in the left knee and "mild degenerative joint disease" or narrowing of the metatarsal phalangeal joint of the right big toe. AR at 321–22. Throughout the medical records, there is no discussion of the impact of the feet and knee conditions on Byrne's ability to stand for extended periods. Indeed Dr. Furtado, the physician who ordered the feet and knees x-rays, interpreted that "his x-rays of knees are good, and his x-rays of his toes only indicate mild degenerative joint disease in the 1st metatarsophalangeal joint of his right foot." AR at 331. However, a mild, unremarkable, or non-severe impairment is not by itself support that there is no functional limitation imposed by the impairment. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (The ALJ must consider the limitations imposed by all of the claimant's impairments when assessing RFC, even those that are not severe. "Even though a non-severe impairment standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim").

Here, the relationship between the x-rays and a limited ability to stand is not incongruous, but ambiguous. *See Baker v. Astrue*, No. 10CV1276-LAB NLS, 2012 WL 218365, at *3 (S.D. Cal. Jan. 23, 2012) (ambiguous evidence of impact of smoking on condition triggers ALJ's duty to conduct an appropriate inquiry, finding that physician's opinions that smoking "would likely aggravate his pulmonary condition" and "I have strongly recommended the patient stop smoking. The patient will need home oxygen" were not ambiguous); *Hilliard*, 442 F. Supp. 2d at 821 ("Because of the uncertainty surrounding [claimant's] mental condition…the ALJ's stated reasons for not finding a cognitive impairment are insufficient [and] the record should have been further developed"). Thus the record does not support the ALJ's conclusion that the feet and knees x-rays are inconsistent with Dr. Lee's opinion.

The only evidence in the record that contradicts Dr. Lee's opinion is the opinion of the non-treating, non-examining physician, Dr. Rudito, that the claimant can stand "six hours in an eight-hour workday." AR at 29, 367. The general rule is that the contradicting opinion of a non-examining physician, to the extent that it relies on the same clinical findings also considered by

11

the treating physician, is not by itself substantial evidence that justifies rejecting the treating physician's opinion; the ALJ must still provide specific, legitimate reasons based on substantial evidence in the record to reject the treating physician's contradicted opinion. *Magallanes*, 881 F.2d at 753; *Lester*, 81 F.3d at 831. The conflicting opinion of a non-treating physician, however, is substantial evidence where the opinion rests on independent objective findings different from the treating physician's, such as an independent examination of the patient. *Magallanes*, 881 F.2d at 753–54 (finding that non-treating doctors' conflicting opinions based on their own clinical examinations of the patient constitute substantial evidence to reject the treating physician's opinion).

Here, Dr. Rudito's opinion is not substantial evidence to reject Dr. Lee's opinion. As a non-examining, non-treating physician, Dr. Rudito's opinion by itself is not substantial evidence. *See Magallanes*, 881 F.2d at 753. Furthermore, his opinion did not rely on any independent objective findings not considered by Dr. Lee. AR at 367. The ALJ suggests that Dr. Rudito's opinion deserves greater weight than Dr. Lee's because Dr. Rudito's "specifically accounts for the MRI scan of the claimant's cervical spine." AR at 29 ("I give significant weight to Dr. Rudito's opinion because it is based on a thorough review of the medical record and specifically accounts for the MRI scan of the claimant's cervical spine"). This reason is a non-sequitur: Dr. Lee is the treating physician–he ordered, obtained, and patently reviewed various x-rays and specifically the MRI scan. AR at 304, 344; *see Lester*, 81 F.3d at 833 (we give more weight to a treating physician's opinion over all others because "the treating physician's role is to take into account all the available information regarding all of his patient's impairments–including the findings and opinions of other experts. The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations"). With regard to the feet and knees x-rays, the record does not clearly establish that either Dr. Lee or Dr. Rudito based their opinions on them. AR at 344 (Dr. Lee's notes refer to various x-rays including the shoulder x-rays taken at the same time as the feet and knees x-rays, see AR at 320–22); AR at 367 (Dr. Rudito's RFC assessment comments that "X ray were

unremarkable" but without any specificity).  Thus, absent any inconsistencies between Dr. Lee's opinion and the record and absent evidence of any independent objective findings considered by Dr. Rudito but not by Dr. Lee, the ALJ's rejection of Dr. Lee's opinion in favor of Dr. Rudito's lacks support from the record.

## V.     CONCLUSION

For the reasons stated above, the ALJ's reasons for rejecting the treating physician's opinion were not supported by substantial evidence in the record and were therefore improper. The rejection of the treating physician's opinion was not harmless because the RFC and hypothetical to the vocational expert would have included additional limitations had the ALJ credited the treating physician's opinion.  *See McCall v. Colvin*, No. 14-CV-05636 JRC, 2015 WL 1481562, at *5 (W.D. Wash. Mar. 31, 2015) ("Had the ALJ credited fully Dr. Bowes' opinion regarding plaintiff's limitations, the RFC would have included additional limitations, as would have the hypothetical to the vocational expert.  As the ALJ's ultimate determination regarding disability was based on the testimony of the vocational expert on the basis of an improper hypothetical question, these errors affected the ultimate disability determination and are not harmless").  Therefore, Plaintiff's Motion is GRANTED.  The ALJ's decision is REVERSED and the case is REMANDED consistent with this Order for further administrative proceedings and development of the record as necessary.

**IT IS SO ORDERED.**

Dated:  May 4, 2015

JOSEPH C. SPERO
Chief Magistrate Judge